JUDGE SULLIVAN

Mark N. Mutterperl (MM-1977)
Mary Ann C. Ball (MB-9466)
Chehrazade Chemcham (CC-1572)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Tel: (212) 318-3000
Fax: (212) 318-3400
*Attorneys for Research in Motion Limited*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x

RESEARCH IN MOTION LIMITED,

    *Plaintiff,*

        -against-

BEYOND CELL INTERNATIONAL, JOHN
DOES 1-50; and XYZ BUSINESSES,

    *Defendants.*

---------------------------------------------------- x

08 CV 03322

CIVIL ACTION NO. _____

FILED UNDER SEAL

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTIONS FOR AN *EX PARTE*
SEIZURE ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Dated:  April 3, 2008

80168017.3

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................... 1

I.    RIM'S TRADEMARKS AND TRADE DRESS ............................................ 1

II.   DEFENDANTS AND THEIR ACTIVITIES ................................................. 7

ARGUMENT ..................................................................................................... 13

I.    EX PARTE SEIZURE ..................................................................................... 13

    A.   PURSUANT TO THE COUNTERFEITING ACT, THE  COURT IS EMPOWERED TO ORDER AN EX PARTE SEIZURE OF ALL COUNTERFEIT GOODS AND OF ALL RECORDS DOCUMENTING THE MANUFACTURE, SALE OR RECEIPT OF COUNTERFEIT GOODS ................................................................................................ 13

        1.   RIM Has Met All Of The Statutory Conditions ...................................... 14

            a.   "An order other than an ex parte seizure order is not adequate to achieve the purposes of  section 1114 of this title" ................................................................................................. 15

            b.   "The applicant has not publicized the requested seizure" ........... 15

            c.   "The applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services" ................................... 15

            d.   "An immediate and irreparable injury  will occur if such seizure is not ordered" ............................................................... 16

            e.   "The matter to be seized will be located  at the place identified in the application" ....................................................... 16

            f.   "The harm to the applicant of  denying the application outweighs the harm to the  legitimate interests of the person against whom  seizure would be ordered of granting the application" ............................................................................... 17

            g.   "The person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." ...................................................................................... 17

## TABLE OF CONTENTS
(continued)

Page

II.  PRELIMINARY INJUNCTION ..................................................................................... 18

    A.  PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF ................................... 18

        1.  RIM Is Likely To Succeed On The Merits Of This Action ..................... 18

        2.  RIM Will Suffer Irreparable Harm If Defendants Are Not Enjoined ...... 19

        3.  The Public Interest In Not Being Deceived or Misled Supports the
            Granting of Preliminary Injunctive Relief ............................................... 20

III.  EXPEDITED DISCOVERY ......................................................................................... 21

    A.  PLAINTIFF'S MOTION FOR  EXPEDITED DISCOVERY SHOULD
        BE GRANTED ................................................................................................. 21

        1.  Some Connection Between Expedited  Discovery And the
            Avoidance of the Irreparable Injury ......................................................... 22

        2.  The Injury That Will Result Without Expedited Discovery Is
            Greater Than The Injury That Defendants Will Suffer  If Expedited
            Relief Is Granted ....................................................................................... 22

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.,*
457 F. Supp. 2d 474 (S.D.N.Y. 2006) ................................................................21

*American Cyanamid Co. v. Campagna Per La Farmacie In Italia S.P.A.,*
847 F.2d 53 (2nd Cir. 1988) ...................................................................16, 18

*Berkshire Fashions, Inc. v. Sara Lee Corp.,*
729 F. Supp. 21 (S.D.N.Y. 1990), *aff'd*, 904 F.2d 33 (2nd Cir. 1990) ....................................20

*Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc.,*
832 F.2d 1320 (2nd Cir. 1987) ................................................................16

*Corning Glass Works v. Jeanette Glass Co.,*
308 F. Supp. 1321 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2nd Cir. 1970) ..............................20

*Francis S. Denney, Inc. v. I.S. lab., Inc.,*
737 F. Supp. 247 (S.D.N.Y. 1990) ................................................................21

*Fun-Damental Too v. Gemmy Indus. Corp.,*
111 F.3d 993 (2nd Cir. 1997) ................................................................18

*Montres Rolex, S.A. v. Snyderm*
718 F.2d 524 (2d Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984) ...........................................13

*Multi-Local Media Corp. v. 800 Yellow Book, Inc.,*
*813 F. Supp.* 199 (E.D.N.Y. 1993) ................................................................18, 20

*Nabisco, Inc. v. PF Brands, Inc.,*
191 F.3d 208 (2nd Cir. 1999), *abrogated on other grounds, Moseley, v. V Secret
Catalogue, Inc.*, 537 U.S. 418 (2003) ................................................................19

*Omega Importing Corp. v. Petri-Kine Camera Co.,*
451 F.2d 1190 (2nd Cir. 1971) ................................................................16, 19

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.,*
970 F.2d 552 (9th Cir. 1992) ................................................................13

*RJR Foods, Inc. v. White Rock Corp.,*
603 F.2d 1058 (2nd Cir. 1979) ................................................................15, 19

*Scarves by Vera, Inc. v. Todo Imports, Ltd.,*
544 F.2d 1167 (2nd Cir. 1976) ................................................................20

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Tanning Research Labs., Inc. v. Worldwide Import & Export Corp.,*
803 F. Supp. 606 (E.D.N.Y. 1992) ...................................................................13, 19

*Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.,*
924 F. Supp. 17 (S.D.N.Y. 1996) .........................................................................21

*Twentieth Century Fox Film Corporation v. Mow Trading Corp.,*
749 F. Supp. 473 (S.D.N.Y. 1990) ...................................................................21, 22


**FEDERAL STATUTES**

15 U.S.C. § 1114...................................................................................................18

15 U.S.C. § 1116 ("Trademark Counterfeiting Act of 1984")..................................1, 14

15 U.S.C. § 1116(d) ..............................................................................................13

15 U.S.C. § 1116(d)(4)(B) .....................................................................................14

15 U.S.C. § 1125...................................................................................................18

15 U.S.C. § 1127...................................................................................................19

18 U.S.C. § 2320...............................................................................................14, 15


**STATE STATUTES**

New York General Business Law § 349....................................................................18

New York General Business Law § 360-l .................................................................18


**LEGISLATIVE REPORTS**

S. Rep. No. 98-526, 98th Cong., 2d Sess. 5 (1984), reprinted in 1984 U.S.C.C.A.N. 3627 ....13, 17

*Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation,* 130
Cong. Rec. H12076 (Oct. 10, 1984) ......................................................................14

## INTRODUCTION

Plaintiff Research in Motion Limited ("RIM") by its undersigned attorneys submits this memorandum of law in support of its motions for an emergency *ex parte* order of seizure, a preliminary injunction, and expedited discovery, pursuant to the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116 (the "Counterfeiting Act" or "Section 1116"), to stop defendants Beyond Cell International ("BEYOND CELL"), JOHN DOES 1-50, and XYZ BUSINESSES (collectively "Defendants") from deceiving the public through the sale and distribution of hazardous counterfeit batteries for BlackBerry handheld devices and from destroying evidence relating to those sales in violation of federal and state trademark laws.

## STATEMENT OF FACTS

### I.     RIM'S TRADEMARKS AND TRADE DRESS

RIM is a leading designer, manufacturer and marketer of wireless solutions for the worldwide mobile communications market.  RIM's portfolio of award-winning products, services and embedded technologies are used by thousands of organizations throughout the world and include the world-renowned, high-quality wireless BLACKBERRY handheld device product line and accessories and services related thereto.  RIM's handheld BLACKBERRY products are powered by RIM's proprietary batteries.  (Declaration of Mark Guibert, dated March 28, 2008 at ¶ 4 ("Guibert Decl. ¶ __")).

RIM owns numerous trademarks identifying its BLACKBERRY handheld product line and products and services related thereto, including without limitation, the following U.S. federal registrations:

| U.S. REGISTRATION NO. | RIM TRADEMARK |
|---|---|
| 2036380, 2833837 | RESEARCH IN MOTION |
| 2402763, 2678454 | *BLACKBERRY* |
| 2672464, 2700671, 2844340 | BLACKBERRY |
| 3102687 | **BlackBerry** |
| 3105797, 3240231 | |

(These marks are collectively referred to herein as the "BLACKBERRY Trademarks") (Guibert Decl. at ¶ 3).

RIM's proprietary BLACKBERRY batteries include distinctive trade dress including that depicted and described below. (*Id.* at ¶ 7 ). An example of the Blackberry 8100 Series C-M2 battery is:



The trade dress for this battery consists of, among other elements, a rectangular battery featuring a label having:

- a rayed background comprised of thick and thin lines, where: the thick lines are of a uniform dark shade of yellow (PANTONE® 130 C) and the thin lines are of a

uniform light shade of yellow (PANTONE 115 C); and the lines appear to originate at a common nucleus off the left side of the battery and diverge across the battery from left to right in an expanding sunburst-style pattern;

- a registered RIM trademark logo on the left side comprised of a pattern of seven semi-circular rectangular shapes (Registration Nos. 3105797 and 3240231) (hereinafter referred to as the "RIM Logo") where: two of the bottom shapes are shaded in the light shade of yellow (PANTONE 115 C) with thin white lines superimposed; and three of the middle shapes are partially shaded in the light shade of yellow (PANTONE 115 C) with the thin white lines superimposed, and the top two shapes are white;

- the registered RIM trademark on the bottom right-hand side comprising the RIM Logo followed by "BlackBerry" (Registration No. 3102687); and

- the term "C-M2" on the top right hand-side followed by a white silhouette icon of a lock.

  (*Id*. at ¶ 6).

An example of the Blackberry 8800 Series C-X2 battery is:



The trade dress for this battery consists of, among other elements, a rectangular battery featuring a label having:

- a rayed background comprised of thick and thin lines, where: the thick lines are of a uniform dark shade of green (PANTONE 584 C) and the thin lines are of a uniform light shade of green (PANTONE 584 C); and the lines appear to originate at a common nucleus off the left side of the battery and diverge across the battery from left to right in an expanding sunburst-style pattern;

- the registered RIM Logo on the left side (Registration Nos. 3105797 and 3240231) where: two of the bottom shapes are shaded in the shade of green (PANTONE 584 C) with thin white lines superimposed; and three of the middle shapes are partially shaded in the light shade of green (PANTONE 584 C) with thin white lines superimposed, and the top two shapes are white;

- the registered RIM trademark on the bottom right-hand side comprising the RIM Logo followed by "BlackBerry" (Registration No. 3102687); and

- the term "C-X2" on the top right hand-side followed by a white silhouette icon of a lock.

(*Id*. at ¶ 6).

An example of the Blackberry C-S2 battery is:



The trade dress for this battery consists of, among other elements, a rectangular battery featuring a label having:

- a blue (PANTONE 647 C) background covered with an array of grey (PANTONE 877 C METALLIC) dots of an even size except at an area towards the center-right of the battery where the dots increase in size towards a central dot to create the visual effect of a magnified section of the label;

- the code "C-S2" on the top left hand side in white followed by a white silhouette icon of a lock;

- a registered white RIM trademark on the bottom right hand-side comprising a RIM Logo followed by "BlackBerry" (Registration No. 3102687);

- a thick gray (PANTONE 877 C METALLIC) line bordering the left and right sides of the battery; and

- a blue (PANTONE 647 C) half-moon border pattern on the top and bottom sides of the battery framed by four rows of increasingly smaller blue (PANTONE 647 C) dots against a gray (PANTONE 877 C METALLIC) background.

(*Id*. at ¶ 6).

The total overall impression of each of these three batteries constitutes the BLACKBERRY Trade Dress and distinguishes the BLACKBERRY batteries from the products of others.  The BLACKBERRY Trade Dress and BLACKBERRY Trademarks are well known, associated with RIM, and inherently distinctive.  (*Id*. at ¶ 6).

RIM extensively promotes its products throughout the United States.  Since FY 2005, in the United States alone, RIM has sold in excess of 16 million BLACKBERRY wireless handheld devices having genuine RIM batteries bearing the BLACKBERRY Trade Dress (including BLACKBERRY Trademarks).  Typically, the consumer must install the battery.  RIM also sells replacement batteries bearing the BLACKBERRY Trade Dress through accessory sales channels including US carrier partners such as T-Mobile, Verizon, AT&T and others as well as directly from RIM at www.shopblackberry.com.  (*Id*. at ¶ 12).

People throughout the world recognize products bearing the BLACKBERRY Trademarks and Trade Dress as high quality, reliable products made and distributed by RIM.  (*Id*. at ¶ 10).  RIM has developed enormous amounts of goodwill in the industry.  (*Id*. at ¶ 14).  The BLACKBERRY Trademarks and Trade Dress are well-known and respected by consumers worldwide.  (*Id*. at ¶ 10).  The BLACKBERRY Trademarks and Trade Dress represent RIM's commitment to providing high quality wireless hand held devices and accessories related thereto.  (*Id*. at ¶ 13).  The BLACKBERRY Trademarks and Trade Dress are of inestimable value to RIM.  (*Id*. at ¶ 14).

RIM has engaged and continues to engage in interstate activities designed to promote BLACKBERRY Trademarks and Trade Dress and the business and goodwill associated with each of its marks, trade dress, logos and property in the State of New York and throughout the

United States. (*Id*. at ¶ 15). Since 2004, RIM has spent more than $ 180 million advertising and promoting the BLACKBERRY Trademarks and Trade Dress in the United States, achieving total worldwide sales for all products bearing the BLACKBERRY Trademarks in excess of $1.8 Billion in FY 2007 in the United States. (*Id*. at ¶ 11).

## II.    DEFENDANTS AND THEIR ACTIVITIES

Defendants are improperly profiting from RIM's substantial investment in its BLACKBERRY Trademarks, Trade Dress, and reputation by incorporating, in whole and in part, RIM's BLACKBERRY Trademarks and Trade Dress on counterfeit, infringing and diluting batteries and into Beyond Cell's website where the offending batteries are sold. Defendants' products may pose a risk to the public's health and safety.

Specifically, Beyond Cell is in the business of marketing and selling cellphone accessories through its interactive website www.beyondcell.com ("the Beyond Cell Website"). Among the items offered for sale on the Beyond Cell Website are purported BLACKBERRY batteries described as intended for various models of the RIM BLACKBERRY handheld line of products including the following:

| *BEYOND CELL BATTERY MODEL* | *BEYOND CELL BATTERY DESCRIPTION* |
|---|---|
| "BBB6510" | "RIM BlackBerry 6510 7290 7230 7200 7210 7250 7270 7280 7230 7510 7520 7750 7780 Li-ion Battery (Standard 1000 mAh Capacity) |
| "BBB8100" | "BlackBerry 8100 Pearl 8120 Pearl 8130 CDMA-Pearl c-m2 Li-ion Battery (1000mAh)" |
| "BBB8300" | "Blackberry RIM Curve 8300 8320 8310 7100g 7100i 7100t 7100v 7100x 7105t 7130c 7130e 7130g 8700c 8700f 8700g 8700r 8700v 8703e 8705g 8707g 8707v Li-ion Battery 1000 mAh" |
| "BBB8700" | "Blackberry RIM Curve 8300 8320 8310 7100g 7100i 7100t 7100v 7100x 7105t 7130c 7130e 7130g 8700c 8700f 8700g 8700r 8700v 8703e 8705g 8707g 8707v Li-ion Battery 1000 mAh" |

| BEYOND CELL BATTERY MODEL | BEYOND CELL BATTERY DESCRIPTION |
|---|---|
| "BBB8800" | "BlackBerry 8800 8830 Li-ion 1200mAH" |

(hereinafter collectively referred to as the "Purported BLACKBERRY Batteries"). (Declaration of Joseph Aglione dated April 1, 2008 at ¶ 2 ("Aglione Decl. ¶ __")).

Beyond Cell copies the BLACKBERRY Trademarks and Trade Dress on the Beyond Cell Website. The Beyond Cell Website displays no price for the Purported BLACKBERRY Batteries. To actually place an order, one must open an account with Beyond Cell, provide an estimate of the intended purchase, and then receive a price quote from Beyond Cell for the estimated purchase. Beyond Cell charges $ 14.00 per battery, well below the standard retail prices for the corresponding genuine BLACKBERRY batteries. (Guibert Decl. ¶ 16) (Aglione Decl. ¶¶ 3-5).

RIM's representatives purchased Purported BLACKBERRY Batteries directly from Beyond Cell and determined through an examination of the packaging, labeling, and artwork that the Purported BLACKBERRY Batteries purchased from Beyond Cell are counterfeit and infringe and dilute RIM's BLACKBERRY Trademarks and Trade Dress. (Aglione Decl. ¶ 5), (Declaration of David Rooke dated March 27, 2008, at ¶¶ 4 - 8 ("Rooke Decl.¶ ___")).

Furthermore, RIM confirmed through physical testing that the Purported BLACKBERRY Batteries are not genuine RIM batteries and in fact lack several critical safety features contained in all the genuine RIM batteries. The lack of these safety features results in potential hazards including explosions, fire, or leakage of contents including toxic substances. (Rooke Decl. ¶¶ 4 – 10).

The Beyond Cell BBB6510 battery is labeled on the back "Research in Motion Limited" and states thereon that the battery is "FOR BLACKBERRY," thereby copying at least the following RIM BLACKBERRY Trademarks: Reg. nos.: 2036380, 2833837, 2402763, 2678454, 2672464, 2700671, 2844340.  (Guibert Decl. ¶ 3), (Rooke Decl. ¶¶ 4, 4.1 – 4.4).  Among other things, the Beyond Cell BBB6510 is a black rectangular battery featuring a white label having "Research in Motion Limited" printed in black on the top left-hand side of the label and the description of the battery as a "Lithium Ion Cell" "FOR BLACKBERRY."  (Rooke Decl. ¶¶ 4, 4.1 – 4.4).  RIM's physical testing confirmed that the BBB6510 battery is counterfeit and lacks several critical safety features contained in all genuine RIM batteries. (*Id.*).   A thorough explanation of the analysis of the BBB6510 battery is found in the Declaration of David Rooke at paragraphs 4, 4.1 – 4.4, 9, and 10.

A view of the authentic RIM battery and Beyond Cell battery, side by side, makes the point:

*COUNTERFEIT "BBB6510" BATTERY*          *ORIGINAL 6510 SERIES BLACKBERRY BATTERY*



The Beyond Cell BBB8100 battery is labeled on the back "Research in Motion Limited," has the RIM Logo imprinted on it, and states thereon that the battery is "FOR BLACKBERRY,"

thereby copying at least the following RIM BLACKBERRY Trademarks: Reg. nos.: 2036380, 2833837, 2402763, 2678454, 2672464, 2700671, 2844340, 3105797, 3240231, 3102687. (Guibert Decl. ¶ 3), (Rooke Decl. ¶¶ 5, 5.1 – 5.4).   The BBB8100 battery also copies the BLACKBERRY Trade Dress.   Among other things, it is a rectangular battery featuring a label having a rayed background confusingly similar to that of the genuine corresponding RIM battery and also has the RIM Logo, RIM "C-M2" designation and lock icon imprinted thereon.   (Rooke Decl. ¶¶ 5, 5.1 – 5.4).   RIM's physical testing confirmed that the BBB8100 battery is counterfeit and lacks several critical safety features contained in all genuine RIM batteries.   (*Id.*).   A thorough explanation of the analysis of the BBB8100 battery is found in the Declaration of David Rooke at paragraphs 5, 5.1 – 5.4, 9, and 10.

A view of the authentic RIM battery and BeyondCell battery, side by side, makes the point:

*ORIGINAL 8100 SERIES BLACKBERRY BATTERY*       *COUNTERFEIT "BBB8100" BATTERY*



The Beyond Cell BBB8800 battery is labeled on the back "Research in Motion Limited," has the RIM Logo imprinted on it, and states thereon that the battery is "FOR BLACKBERRY," thereby copying at least the following RIM BLACKBERRY Trademarks: Reg. nos.: 2036380, 2833837, 2402763, 2678454, 2672464, 2700671, 2844340, 3105797, 3240231, 3102687.

(Guibert Decl. ¶ 6), (Rooke Decl. ¶¶ 8, 8.1 – 8.4 ).  The BBB8800 battery also copies the BLACKBERRY Trade Dress.  Among other things, it is a rectangular battery featuring a label having a rayed background confusingly similar to that of the genuine corresponding RIM battery and the RIM Logo, RIM "C-X2" designation and lock icon imprinted thereon.  (Rooke Decl. ¶¶ 8, 8.1 – 8.4 ).  RIM's physical testing of the Beyond Cell BBB8800 battery confirmed that the BBB8800 battery is counterfeit and in fact lacks several critical safety features contained in all genuine RIM batteries.  (*Id.*).  A thorough explanation of the analysis of the BBB8800 battery is found in the Declaration of David Rooke at paragraphs 8, 8.1 – 8.4, 9, and 10.

A view of the authentic RIM battery and BeyondCell battery, side by side, makes the point:

*COUNTERFEIT "BBB8800" BATTERY*          *ORIGINAL 8800 SERIES BLACKBERRY BATTERY*



The Beyond Cell BBB8300 and BBB8700 batteries are labeled on the back "Research in Motion Limited," have the RIM Logo imprinted on them, and state thereon that the batteries are "FOR  BLACKBERRY,"  thereby  copying  at  least  the  following  RIM  BLACKBERRY Trademarks: Reg. nos.: 2036380, 2833837, 2402763, 2678454, 2672464, 2700671, 2844340, 3105797, 3240231, 3102687.  (Guibert Decl. ¶ 6), (Rooke ¶¶ 6, 6.1 – 6.4, 7, 7.1 – 7.4).  The BBB8300 and BBB8700 batteries also copy the BLACKBERRY Trade Dress.  Among other

things, they are rectangular batteries featuring labels having virtually the same array of evenly

spaced dots against a blue background with a visual effect of a magnified section of the label and

the RIM Logo, RIM "C-S2" designation and lock icon imprinted thereon.  (Rooke ¶¶ 6, 6.1 –

6.4, 7, 7.1 – 7.4).  RIM's physical testing of the Beyond Cell BBB8300 and BBB8700 batteries

confirmed that these batteries are counterfeit and lack several critical safety features contained in

all genuine RIM batteries.  (*Id.*).  A thorough explanation of the analyses of the BBB8300 and

BBB8700 batteries is found in the Declaration of David Rooke at paragraphs 6, 6.1 – 6.4, 7, 7.1

– 7.4, 9, and 10.  A view of the authentic RIM battery and the two Beyond Cell batteries, side by

side, demonstrates the point:

*ORIGINAL* C-S2
*BLACKBERRY BATTERY*

*COUNTERFEIT*
*"BBB8700"/"BBB8300"*
*BATTERIES*



The testing further shows that the Beyond Cell Purported BLACKBERRY Batteries do

not comply with the IEEE 1725 industry standard which sets forth uniform criteria for the

design, production, and evaluation of cellular phone batteries.  (*Id.* at ¶ 10).  In particular, the

testing disclosed that the Beyond Cell Purported BLACKBERRY Batteries lack safety features

required by the IEEE 1725 standard.  (*Id.*)

Defendants are not affiliated with or sponsored by RIM and have not been authorized by RIM to sell the batteries at issue. (Guibert Decl. at ¶¶ 18). As a result of Defendants' activities, RIM is extremely concerned about the irreparable harm that is being caused, and will continue to be caused, by Defendants' sale of the counterfeit BlackBerry batteries. (*Id.* at ¶¶ 19, 20).

<div align="center">ARGUMENT</div>

I.    EX PARTE SEIZURE

      A.    *PURSUANT TO THE COUNTERFEITING ACT, THE COURT IS EMPOWERED TO ORDER AN EX PARTE SEIZURE OF ALL COUNTERFEIT GOODS AND OF ALL RECORDS DOCUMENTING THE MANUFACTURE, SALE OR RECEIPT OF COUNTERFEIT GOODS*

Faced with "an 'epidemic' of commercial counterfeiting," Congress enacted the Counterfeiting Act to provide a meaningful remedy to victims of counterfeit trafficking. *See* S. Rep. No. 98-526, 98th Cong., 2d Sess. 5 (1984), reprinted in 1984 U.S.C.C.A.N. 3627, 3631 (*citing Montres Rolex, S.A. v. Snyderm* 718 F.2d 524, 528 (2d Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984)). The Counterfeiting Act expressly permits a court to grant an *ex parte* order of seizure in "[c]ivil actions arising out of [the] use of counterfeit marks," including "goods . . and records documenting the manufacture, sale or receipt," of the counterfeit goods. 15 U.S.C. § 1116(d). *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 558 (9th Cir. 1992) (noting that lower court properly granted *ex parte* seizure order under section 1116, which "explicitly authoriz[es] the prejudgment seizure of counterfeit goods" and related documentary evidence); *Tanning Research Labs., Inc. v. Worldwide Import & Export Corp.*, 803 F. Supp. 606, 608 (E.D.N.Y. 1992)(*ex parte* order of seizure granted pursuant to Section 1116). Congress stated the intent and purpose of the foregoing statute as follows:

> The purpose of the *ex parte* seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that the courts are able to exercise their

jurisdiction effectively in counterfeiting cases. Testimony before both the House and Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.

*Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation*, 130 Cong.

Rec. H12076, at 12080 (Oct. 10, 1984).

RIM cannot effectively trace the sale or distribution of the counterfeit and hazardous BLACKBERRY batteries without obtaining the counterfeit batteries themselves and the records documenting the respective roles of Defendants in the counterfeit chain. Defendants are openly distributing and selling counterfeit BLACKBERRY batteries and may be manufacturing or importing them. At a minimum, Defendants know they are not buying RIM BLACKBERRY products from RIM and are not buying and selling the batteries at or near the price at which RIM authentic BLACKBERRY batteries are usually sold. By selling counterfeit BLACKBERRY batteries, Defendants may have knowingly and intentionally engaged in a criminal act. *See* 18 U.S.C. § 2320. Similarly situated defendants invariably ignore court process, and transfer bogus goods if given advance notice. Because there is every reason to suspect that Defendants will destroy the counterfeit goods and the records relating thereto should RIM seek to compel discovery through *inter partes* discovery means, RIM has no choice but to seek an *ex parte* seizure under the Counterfeiting Act.

1.    *RIM Has Met All Of The Statutory Conditions*

A plaintiff must satisfy seven statutory criteria before the Court can grant an *ex parte* order of seizure under Section 1116. *See* 15 U.S.C. § 1116(d)(4)(B). As demonstrated below and in the accompanying evidentiary materials, RIM has met each of these criteria.

a. *"An order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title"*

As stated above, Defendants are openly distributing and selling counterfeit BLACKBERRY batteries, may be manufacturing or importing them, and know they are not buying RIM BLACKBERRY products from RIM and are not buying and selling the batteries at or near the price at which RIM authentic BLACKBERRY batteries are usually sold. Since similarly situated defendants invariably ignore court process, and transfer bogus goods if given advance notice, and that Defendants may have knowingly and intentionally engaged in a criminal act (*see* 18 U.S.C. § 2320), RIM has every reason to believe that Defendants will destroy counterfeit goods and related records if given notice to produce such goods and records pursuant to a court order.

b. *"The applicant has not publicized the requested seizure"*

RIM has not publicized the requested seizure. (Declaration of Mark N. Mutterperl dated April 1, 2008 ¶ 3 ("Mutterperl Decl. at ¶ __")). In addition, as set forth in the accompanying Order, all papers in support of RIM's application for *ex parte* relief are to be kept under seal by the Clerk of this Court pending the effectuation of the seizure order.

c. *"The applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services"*

In support of its *ex parte* application, RIM has submitted evidence that Defendants sold and offered to sell counterfeit BLACKBERRY batteries through its website www.beyondcell.com. Given this indisputable evidence, RIM has met its burden of demonstrating the likelihood of success on the merits of its counterfeiting claim and need not advance any additional proof to satisfy this statutory criterion. *See RJR Foods, Inc. v. White*

*Rock Corp.*, 603 F.2d 1058, 1060 (2nd Cir. 1979) ("defendant's conscious imitation . . . supports at least a presumption that the similarity will cause customer confusion"); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1194 (2nd Cir. 1971) ("The probabilities of confusion from the sale of another [product] bearing the identical name are too obvious to require detailed proof.").

<div align="center">

d.    *"An immediate and irreparable injury*
*will occur if such seizure is not ordered"*

</div>

It is well settled in this Circuit that "[i]n trademark cases, 'a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." *American Cyanamid Co. v. Campagna Per La Farmacie In Italia S.P.A.*, 847 F.2d 53, 55 (2nd Cir. 1988) (citation omitted); *accord Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1320, 1321 (2nd Cir. 1987). As demonstrated above, the very purpose of Defendants' conduct is to confuse the public as to the source of its counterfeit goods.

Unless this Court authorizes an immediate seizure of the counterfeit goods and records documenting the counterfeiting activity, it is highly unlikely that RIM would be able to obtain the stock of counterfeit goods and identify or prosecute those additional persons responsible for flooding the market with counterfeit BlackBerry batteries. Moreover, those persons will continue to sell the counterfeit BlackBerry batteries to the public, causing further damage to the invaluable reputation and goodwill RIM has built for BlackBerry branded products and services.

<div align="center">

e.    *"The matter to be seized will be located*
*at the place identified in the application"*

</div>

As detailed in the Aglione Declaration, RIM conducted an extensive investigation to specifically locate where the counterfeit goods are sold. Beyond Cell allegedly operates from 12718 Schabarum Ave., Irwindale, CA 91706. (Aglione Decl.¶ 8).

    f.     *"The harm to the applicant of denying the*
               *application outweighs the harm to the*
               *legitimate interests of the person against whom*
               <u>*seizure would be ordered of granting the application"*</u>

None of the Defendants would suffer any harm from the requested seizure and, as demonstrated above, RIM would continue to suffer irreparable harm in the absence of this emergency relief. Plaintiff's *ex parte* order of seizure is directed to the counterfeit goods and the documentary evidence of Defendants' counterfeiting activities. The Defendants have no legitimate interest in these items. In contrast, RIM has a paramount interest in protecting the valuable BlackBerry Trademarks and Trade Dress that it has invested so much money and time in establishing.

    g.     *"The person against whom seizure would be*
               *ordered, or persons acting in concert with*
               *such person, would destroy, move, hide, or*
               *otherwise make such matter inaccessible to the court,*
               <u>*if the applicant were to proceed on notice to such person."*</u>

Given Defendants' open sale and advertising of counterfeit batteries at very low prices, RIM has every reason to believe that Defendants will attempt to destroy the records of their counterfeiting activities. The concerns Congress emphasized when it enacted the Counterfeiting Act are directly applicable here. As Congress noted, "many of those who traffic in counterfeits have become skilled at destroying or concealing counterfeit merchandise when a day in court is on the horizon." S. Rep. no. 98-526, *supra*, at 6-7, reprinted in 1984 U.S.C.C.A.N. at 3632-33. This *ex parte* seizure is thus needed to prevent the Defendants from frustrating RIM's attempt to protect its trademark and trade dress rights.

II.    PRELIMINARY INJUNCTION

A.    *PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF*

"Federal courts have long recognized the need for immediate injunctive relief in trademark infringement cases due to the amorphous nature of the damage to the trademark and the resulting difficulty in proving monetary damages." *Multi-Local Media Corp. v. 800 Yellow Book, Inc., 813 F. Supp.* 199, 202 (E.D.N.Y. 1993). To obtain preliminary injunctive relief, a plaintiff asserting infringement of a trade mark or trade dress must demonstrate irreparable harm and either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and (3) a balance of the hardships tipping decidedly in its favor. *See, e.g. Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 998-99 (2nd Cir. 1997)(affirming grant of preliminary injunction in trade dress case); *American Cyanamid Co.*, 847 F.2d at 54-55 (affirming grant of preliminary injunction in trademark case).

1.    *RIM Is Likely To Succeed On The Merits Of This Action*

RIM has alleged causes of action for (a) federal trademark counterfeiting under 15 U.S.C. § 1114; (b) federal trademark infringement under § 1114; (c) federal false description and false designation of origin in commerce under 15 U.S.C. § 1125; (d) federal trade dress infringement under 15 U.S.C. § 1125; (e) federal trademark dilution under 15 U.S.C. § 1125; (f) federal trade dress dilution under § 1125; (g) New York dilution of trademark and injury to business reputation under New York General Business Law § 360-l; (h) New York dilution of trade dress under New York General Business Law § 360-l; (i) deceptive trade practices under New York General Business Law § 349; (j) unfair competition under the common law of the State of New York; and (k) unjust enrichment under the laws of the State of New York.

RIM can ultimately prevail on all of these claims by showing that Defendants' use of its trademarks and trade dress has caused consumer confusion. *See, e.g. Fun-Damental Too*, 111

F.3d at 1007 (affirming district court grant of preliminary injunction in trade dress case where district court found *inter alia* that " that there is a substantial likelihood of confusion between the [products at issue]"); *Tanning Research Lab., Inc. v. Worldwide Import & Export Corp.*, 803 F. Supp. 606, 608-09 (E.D.N.Y. 1992)("to prevail [on their trademark claims] plaintiffs need only show that they own a valid trademark and that the Defendants' use of the trademark is likely to cause confusion regarding the source of the product"). While "[c]onsumer confusion – the nub of an action for infringement—is, of course, unnecessary to show the actionable dilution of a famous mark, . . . [c]onsumer confusion [] undoubtedly dilute[s] the distinctive selling power of a trademark." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 219, 222 (2nd Cir. 1999)("In general, the closer the products are to one another, the greater the likelihood of both confusion and dilution."), *abrogated on other grounds, Moseley, v. V Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003) (observing that there are cases where actual dilution can be proved by circumstantial evidence "the obvious case is one where the junior and senior marks are identical").

RIM has already established consumer confusion because counterfeit marks are, by definition, confusingly similar and likely to mislead or deceive consumers. *See* 15 U.S.C. § 1127 (defining a counterfeit mark as "spurious mark which is identical with, or substantially indistinguishable from, a registered mark"); *see also RJR Foods, Inc.*, 603 F.2d at 1060 ("defendant's conscious imitation . . . supports at least a presumption that the similarity will cause customer confusion"); *Omega Importing Corp.*, 451 F.2d at 1194 ("The probabilities of confusion from the sale of another [product] bearing the identical name are too obvious to require detailed proof").

2.    *RIM Will Suffer Irreparable Harm If Defendants Are Not Enjoined*

Where, as here, a plaintiff has succeeded in showing a likelihood of confusion, irreparable injury "almost inevitably follows." *Omega Importing Corp.*, 451 F.2d 1195. Indeed,

80168017.3                                          - 19 -

irreparable injury is such a natural consequence of consumer confusion that it is "presumed" to exist whenever confusion is demonstrated. *Multi-Local Media Corp.*, 813 F. Supp. at 205 (where a Lanham Act plaintiff has established the likelihood of consumer confusion, irreparable harm "is presumed").

        3.    *The Public Interest In Not Being Deceived or Misled Supports the Granting of Preliminary Injunctive Relief*

Defendants' distribution and sale of hazardous counterfeit goods causes harm not only to RIM but also to the marketplace in general and, more specifically, to the consumers who are misled into buying what they mistakenly believe are genuine RIM BlackBerry batteries. Under the governing case law, this harm clearly merits immediate injunctive relief. *See Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1172 (2nd Cir. 1976) (listing "the public's interest in not being misled by confusingly similar marks" as one of the interests the Lanham Act was designed to protect); *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 729 F. Supp. 21, 22 (S.D.N.Y. 1990), *aff'd*, 904 F.2d 33 (2nd Cir. 1990) ("the public interest and the integrity of the marketplace . . . are the principal concerns of the Lanham Act"); *Corning Glass Works v. Jeanette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2nd Cir. 1970) ("While plaintiff is injured when consumers purchase Lady Cornellia ovenware believing it to be CORNING WARE, consumers, too, are . . . victimized. An injunction is thus in the public interest; only if the distribution of Lady Cornellia ovenware is stopped can further fraud be avoided.").

III.    EXPEDITED DISCOVERY

    A.    *PLAINTIFF'S MOTION FOR*
        *EXPEDITED DISCOVERY SHOULD BE GRANTED*

    As set forth in the accompanying Order, plaintiff seeks immediate discovery including disclosure of the documentary evidence concerning each Defendants' counterfeiting activity and depositions. Expedited discovery requests such as these are routinely granted in trademark, trade dress infringement cases filed in this Circuit. *See, e.g., Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 476 (S.D.N.Y. 2006) (action for *inter alia* trademark dilution); *Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.,*, 924 F. Supp. 17, 18 (S.D.N.Y. 1996) (action for trademark infringement); *Francis S. Denney, Inc. v. I.S. lab., Inc.*, 737 F. Supp. 247 (S.D.N.Y. 1990) (action for trademark and trade dress infringement and unfair competition); *Twentieth Century Fox Film Corporation v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (action for copyright infringement and unjust enrichment). Here, RIM is being irreparably harmed by the manufacture, importation, offering for sale and sale of the counterfeit products. Delay in discovery will prevent meaningful investigation into Defendants' sources and routes of commerce.

    All the requesting party has to demonstrate to be entitled to expedited discovery is "'(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between expedited discovery and the avoidance of the irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.'" *Twentieth Century Fox Film Corporation*, 749 F. supp. at 475 (citation omitted). As shown above, RIM can easily make the first two showings and, as shown below, RIM can easily make the remaining two showings.

1.    *Some Connection Between Expedited*
*Discovery And the Avoidance of the Irreparable Injury*

Without expedited discovery of Defendants' counterfeiting activities, RIM cannot meaningfully protect its registered trademarks, its trade dress, or timely stop Defendants' illegal activities or the illegal activities of possibly other persons whose identities are currently unknown to RIM.  RIM will also need expedited discovery to allow it to find others included in this counterfeit ring and to stop their actions.  For example, inquiry into defendants' counterfeiting activities "on an expedited basis may very well lead to evidence of continuing infringement by [these] defendant[s] or others; it may also lead to the discovery of future plans to infringe or the discovery of additional infringing merchandise." *Twentieth Century Fox Film Corp.*, 749 F. Supp at 475.

2.    *The Injury That Will Result Without Expedited Discovery Is*
*Greater Than The Injury That Defendants Will Suffer*
*If Expedited Relief Is Granted*

If the full scope of Defendants' counterfeiting activities is not immediately exposed, RIM and the buying public will continue to suffer.  By contrast, expedited discovery should pose little hardship for Defendants.  The proposed discovery schedule is both reasonable and necessary and, since Defendants' own conduct has necessitated this action, there is no doubt that they are fully aware of the underlying facts.

CONCLUSION

For the foregoing reasons, this Court should grant RIM's motions for an e*x parte* seizure

order, preliminary injunction, and expedite discovery.

<div style="margin-left: 50%">

Respectfully submitted,

</div>

Dated: April 3, 2008

<div style="margin-left: 50%">

Mark N. Mutterperl (MM-1977)
Mary Ann C. Ball (MB-9466)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Tel: (212) 318-3000
Fax: (212) 318-3400
*Attorneys for Plaintiff*
*Research in Motion Limited*

</div>